The Honorable William L. "Bill" Walker, Jr. State Senator Post Office Box 1609 Little Rock, AR 72201
Dear Senator Walker:
I am writing in response to your request for my opinion regarding the following question:
 The City of Wrightsville recently received a donation of two 16-passenger vans. Other than using the vehicles to perform specific functions of the City, are there any other ways in which the City may use the vans without violating State law? May the City lease these vehicles to civic groups, churches, non-profit groups and other entities? Are there any circumstances in which the vehicles may be loaned to such groups for their use?
RESPONSE
In my opinion, the city may not use the vans for any purpose that does not further municipal affairs. The city may lease out the vans only if doing so would serve some legitimate public purpose. I believe loaning out the vans to churches or private nonprofit organizations would be flatly unconstitutional. The propriety of loaning the vans out to other entities must be determined on a case-by-case basis, subject to the general principle that municipalities are generally barred from donating public resources to other entities.
In Ark. Op. Att'y Gen. No. 96-098, my predecessor opined that a city, like a county, is authorized to obtain property by gift for use in accordance with the rules governing the use of any public property. Among these rules is the following:
 It shall be unlawful for any city official or employee of any municipal corporation in this state to furnish or give to any person, concerns, or corporations any property belonging to the municipal corporation, or service from any public utility owned or operated by the municipal corporation, unless payment is made therefor to the municipal corporation at the usual and regular rates, and in the usual manner. . . .
A.C.A. § 14-42-108(b)(1). This statute is in all respects consistent with Ark. Const. art XII, § 5, which provides that "[n]o county, city, town or other municipal corporation shall . . . appropriate money for, or loan its credit to, any corporation, association, institution or individual." Any use of public property in derogation of this constitutional provision would invite challenge as an illegal exaction under Ark. Const. art XVI, § 13.
As a general proposition, cities are authorized to take action or enact ordinances relating to "municipal affairs," see A.C.A. §§ 14-42-307,14-43-601 and — 602, so long as the action or ordinance does not contravene state law. Ark. Const. art 12, § 4; A.C.A. § 14-42-307. As the court noted in Cosgrove v. City of West Memphis, 327 Ark. 324-326,938 S.W.2d 827 (1997):
 Cities have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensable (not merely convenient) to their objects and purposes.
The question of whether any particular proposed use of the vans at issue would be permissible under these guidelines is one of fact that I cannot address in the abstract.
I can, however, offer some general principles that should apply in determining whether the city may lease these vehicles to "civic groups, churches, non-profit groups and other entities." The general power of a municipality to contract — including, presumably, to enter into leases — is set forth at A.C.A. § 14-54-101(2). However, I believe this general power is qualified by an implied proviso that the contract serve some legitimate public purpose. See A.C.A. § 14-42-307(a)(1) (restricting the authority of municipalities to the exercise of "powers relating to municipal affairs"). Section 14-54-105 of the Code, which addresses leases of real property by cities of the second class (a category that includes Wrightsville), is instructive in this regard:
 In order to better provide for the public welfare, safety, comfort, and convenience of their inhabitants, the following enlarged and additional powers are conferred upon cities of the second class:
* * *
 (2) To alter or change the width or extension of streets, sidewalks, alleys, avenues, parks, wharves, and other public grounds, and to vacate or lease out such portions thereof as may not for the time being be required for corporation purposes, and, where lands have been acquired or donated to the city for any object or purpose which has become impossible or impracticable to achieve, the lands may be used or devoted for other proper public or corporate purposes or sold by order of the city council and the proceeds applied for public or corporate purposes. . . .
Under this statute, it is impermissible to lease out public realty unless it has ceased to serve its public purpose and only then for consideration that itself must be devoted to a public purpose. I believe a similar restriction applies to the leasing of publicly owned personalty. Moreover, as this office has noted on numerous previous occasions, not only must any municipal contract serve a public purpose, it must further be supported by adequate consideration. See, e.g., Ark. Ops. Att'y Gen. Nos. 2000-147, 99-408, 98-025 and 97-250. Determining whether this test has been met in any particular instance will entail conducting a detailed investigation into the facts.
The concerns expressed above would be sharply intensified if the city undertook to loan out its vans. In my opinion, loaning out municipal property would amount to temporarily giving it away — a practice that would almost invariably run afoul of the statutory and constitutional authorities recited above. Moreover, I believe loaning a van to a church would clearly violate U.S. Const. amend. I, which prohibits any government action "respecting an establishment of religion," and Ark. Const. art. II, § 24, which provides that "no preference shall ever be given, by law, to any religious establishment, denomination or mode of worship above any other."
I am enclosing for your information Ark. Op. Att'y Gen. No. 1999-408, in which I discuss at length the narrowly restricted circumstances under which a municipality may donate its resources to another entity. Rather than repeating my analysis here, I will simply draw your attention to my final conclusion, to which I still subscribe:
 Perhaps the most that can be said is that if an entity is authorized by statute and is not organized as a private nonprofit corporation, and especially if the donations themselves are authorized by statute, a donation of county or municipal funds may be constitutional.
As I noted in my previous opinion, one can only determine on a case-by-case basis whether any proposed recipient of municipal largesse qualifies under this standard.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosure